WATSON *v.* CINCINNATI, I., ST. L. & C. RY. CO.

*(Circuit Court, D. Indiana. March 30, 1885.)*

PATENTS FOR INVENTIONS—GRAIN-CAR DOORS — PATENTS NOS. 203,226, 78,188—
INFRINGEMENT.

Patent No. 203,226, granted to Chauncey R. Watson, on April 30, 1878, for an improvement in grain-car doors, construed and compared with patent No. 78,188, issued May 26, 1868, to Martin M. Crooker; and *held*, that defendants were not guilty of infringement.

In Equity.

*C. P. Jacobs*, for complainant.

*Geo. Payson*, for defendant.

WOODS, J.    This action is brought against the defendant company for the infringement of letters patent No. 203,226, granted to complainant for an improvement in grain-car doors, bearing date the thirtieth day of April, 1878. The bill alleges that the complainant's invention consists in the combination in an ordinary freight car of the solid sliding outside door, and an inner flexible door, called a grain-door,

which is adapted to slide up overhead, when not needed for use, on rods or other equivalents; this grain-door being of a height to fill not all, but only about half the door-way opening. The answer of the defendant denies the value and novelty of Watson's invention; denies infringement, and alleges that the grain-car doors used by the defendant, as charged in the bill, were made under and in conformity with letters patent No. 78,188, issued May 26, 1868, to Martin M. Crooker. In further exhibition of the prior art, reference is made to other patents, including No. 118,514, issued August 29, 1871, to Horace L. Clark. General replication.

It is admitted by stipulation between the parties "that before the commencement of this suit the defendant hauled over its line of road, in the state of Indiana, freight cars belonging to the Chicago, Rock Island & Pacific Railway Company, having a solid outside door, like an ordinary freight car, and an inner flexible sliding grain-door, of less height than the opening in the side of the car, the grain-door sliding in grooves, like the grooves shown in the patent of Martin M. Crooker, of May 26, 1868, and the slats composing the door being attached to each other by being strung upon wires passing through the slats."

The complainant's claim, as contained in his letters patent, is of the following tenor:

"The combination with a car of an inside flexible or yielding sliding grain-door, having staples, $c$, and the vertical and horizontal bent guiding-rods, C, extending from the floor of the car upwardly and under the roof of the car, as herein shown and described, whereby said door, when not in use, can be carried up on the horizontal portions of said guiding-rods out of the way, substantially as specified."

His specification contains the following statements:

"This invention relates to improvements in the class of grain-doors for cars; and the invention consists in the combination with a car of an inside vertically-sliding flexible or yielding door and guiding-rods, whereby the door, when not in use, may be carried up and placed on the horizontal portion of said guiding-rods, so as to be out of the way, all as substantially hereinafter described. Referring to the accompanying drawings, A represents the body of a car, having guiding-rods, C, at either side of the door-way, fastened at their lower ends in the floor of the car, which rods extend upwardly and parallel with the inner frame of the car, to within a short distance of its top, where they are curved and suitably braced to the central roof-timber, B. D represents the grain-door, constructed of longitudinal sectional pieces, $d^1$, $d^2$, $d^3$, hinged together, as shown at $e$, $e$. The upper and lower sections thereof, $d^1$ and $d^3$, are provided with staples, $c$, $c$, which encompass the guiding-rods, C, and serve to direct the movement of the doors when it is desired to place them out of the way at the top of the car. The guiding-rods at their lower ends may be provided with screw-threads, which work into metal plates provided with female threads, which latter, when affixed to the floor of the car, serve to hold the rods firmly thereto, and in proper position to admit of the desired movement of the grain-doors. The grain-doors, when at the top of the car, may be securely held there out of the way by a hook, $f$, locking into a staple on the upper section of $d^1$.

"The great desideratum to be obtained in the use of a grain-door is that,

while it may serve its proper purpose when the car is loaded with grain, it may with facility be moved out of the way when the car is empty or loaded with other freight, without being detached from the car, whereby its loss or injury is rendered improbable; and it is always in such position that its use as a grain-door may be resorted to whenever needed. The bottom section, $d^5$, of the door may be shod with an iron plate, to prevent injury thereto when being raised to allow of the egress of the grain.

"I am aware that a car-door of similar construction, sliding in grooved ways, is old, and such I do not desire to claim, broadly, as my invention. Said door, however, constitutes an outside or closing car-door proper, and the car could not be loaded or used for bulk grain, unless the grain is put in from the roof of the car, as the door completely closes the door-way or opening. Furthermore, said door is obviously objectionable for other reasons, viz: the grain will lodge or get in the grooved ways in which the door slides, binding or locking it so as to prevent its being raised; and also, being an outside door, the grain pressing against it would force or bulge the door outward, producing a similar effect as the grain lodging in the grooved ways; whereas my door, being an inside door, and reaching the top of the door-way or opening, admits an open space at the top for loading in the grain, with an ordinary outside door, to be locked or otherwise secured after the car is loaded. By also employing guiding-rods for the door to slide upon, and being an inside door, the defects incident to the grooved ways and an outside door before referred to, are entirely obviated."

The record shows that the complainant's application for a patent was rejected, and after amendment was again rejected by the examiner, because it did not present patentable novelty over Crooker's patent, granted 10 years before; but on appeal the examiner in chief reversed this decision, saying:

"The invention in this case is small, and the claim is correspondingly limited. It consists of a combination of various instrumentalities not found in either of the references. Applicant's car, as a whole, is adapted, by convertibility, to uses not compatible with the cases cited, without injury. In this case, the flexible door is applied in addition to the usual slide-doors; and, where coarse freight is to be carried, the flexible shutters are secured in place at the top under the roof of the car."

Counsel for complainant, as understood by the court, in both his oral and printed argument, admits or concedes that the sliding door, described in his patent, does not differ essentially from the sliding door described by Crooker, but insists that the patent consists in the combination in an ordinary freight car of the solid sliding outside door and an inner flexible door. In his brief he says that "until the date of Watson's invention nobody conceived the idea of combining in the same freight car a flexible grain-door with a solid outside door." I do not think this a proper construction, nor, if it were, that the patent could stand upon it. There is nothing in either specification or claim concerning "*ordinary* freight cars," nor *solid sliding* outside doors, and in the claim nothing about *outside* doors at all, unless inferred from the description given of an *inside* door. If, however, such an inference is permissible, and the patent must or may be construed to consist in such a combination of inside and outside doors, as is asserted, it cannot be upheld, because it does not involve invention, but

consists in a mere aggregation of parts, each to perform its separate and independent function, substantially in the same manner as before combination with the other, and without contributing to a new and combined result. The outside door certainly remains unaffected in construction and in use; and the inner door is the same as the Crooker door, with a few slats left off, or taken off, by design, or by accident; and whether done in one way or the other, the change cannot reasonably be called invention, unless the distinction between mere mechanical skill and inventive genius is to be disregarded.

Flexible and rigid doors, outside and inside doors, were all known; and rigid doors, outside and inside, had been used in combination, the inside door being made to fill only part of the opening in order to facilitate the loading of grain; and yet it is now insisted that the mere substitution, in this known combination, of the flexible sliding inside door, in itself not new, constituted invention. If that is the meaning of the decision of the examiner in chief, with due respect, I am constrained to dissent. If it be conceded that the complainant's "car, as a whole, is adapted by convertibility to uses not compatible with the cases cited without injury," the adaptation, so far as it consists in the combination of the inside and outside doors, of whatever form of construction, was either not new, or, if new in respect to the use of the flexible door, did not involve invention. It is not true, however, that this convertibility to different uses is confined to the complainant's car. The Crooker car, in a measure, manifestly has the same capability, whether it has ever been so used or not. In the first place the Crooker door, as described in his specifications, and as shown in the model, is constructed and moved in grooves on the inside of the car, and therefore may be used with an outside door. It is not liable, under pressure of the grain, to bulge outward, as suggested in complainant's specification; and it is evident that one of these doors (although filling the entire opening) might be used as an inside grain-door upon any car, the grain being loaded from the opposite side, over another door filling only part of the opening; and, with the grooves extended from one side to the other of the car, the single door could be shifted as convenience of loading and unloading should require. And if the Crooker door, at full height, can be so used upon either side of a car, and to that extent accomplish the same kind of results and advantages to a degree which are effected by the use of complainant's contrivance, it is plain that without invention it may be separated in the middle, and one piece used upon one side of the car and the other upon the other side. It is conceded, and whether conceded or not it is certainly true, that the Crooker door, made as described in his patent, may be used as an inside door, at the same time with, or in combination with, the ordinary outside door. The suggestion embraces nothing patentable, and, this much done, it is an easy process of reasoning—and reasoning is not invention—to extend the grooves continuously from side to side of the car, divide the

slatted door into two, and have the car used by the defendant, which is claimed to be an infringement. With the *Crooker* and *Clark* patents in view, and with a knowledge of the difficulties to be overcome, it is a plain process of reasoning, involving but moderate mechanical skill, to devise the defendant's car; and unless the complainant's combination embraces something more, it was not patentable.

Indeed, it seems to me too clear almost for discussion that if the complainant's patent can be upheld upon any construction whatever, it must be restricted to the particular devices described, combined in the manner stated in his specification; and, so restricted, even though it be deemed to embrace the outside as well as inside door in the combination, it has not been infringed, because the inside doors used by the defendant are held and moved in grooves, without the presence or aid of the rods and staples which are described as a part of the complainant's device, and expressly embodied in his claim. It may be that there is no essential difference, mechanically, between the grooves and the rods and staples; but, if so, the complainant is estopped from saying it, because he has expressly claimed one and disclaimed the other; and this alone is a sufficient ground to rest the decision of the case upon. By the terms of his specification and claim he has made the rods and staples a part of his combination, and has expressly disavowed the use of grooves as an equivalent, and consequently may not now, whatever otherwise might have been his right, insist that the grooves are an equivalent of the rods, or that the rods and staples are not essential to his combination. This being so, the defendants have not used the entire combination, and consequently have not infringed.

Bill dismissed.